JUNE 1821.<br>Gibson, &c.<br>vs.<br>Horton

---

## COURT OF APPEALS, (E. S.) JUNE TERM, 1821.

### GIBSON et ux. et al. Lessee, vs. HORTON.

APPEAL from *Queen-Anne's* county court. Ejectment
for a tract of land called *Matthew's Enlargement.* The
judgment of the court below was rendered on the follow-
ing case stated, viz. That a grant regularly issued for
the land mentioned in the declaration, and that the title
to said land was regularly transmitted by descent or de-
vise to *John Elliott,* who died, seized thereof in fee simple,
on the 20th of November 1784. That a grant also regu-
larly issued for the lands mentioned in his will, called
*Grubby Neck* and *Buck's Range,* and that he died seized
of the same in fee simple. He regularly executed his will
on the 23d of October 1784, and at the time of his death
had no other child, or children, than those mentioned in
his will, nor were there any other descendants of any
child or children of the devisor. The parts of the will on
which the question before the court depended, were as
follow: "I give and bequeath to my son *John Elliott,* my
dwelling plantation called *Mathew's Enlargement,* con-
taining 155 acres, and 90 acres in *Chester Forest,* near
the Red Lyon Branch, *to him and his heirs for ever.* I
give and bequeath to my son *Henry Elliott,* my plantation
in *Caroline* county, known by the name of *Grubby Neck
Addition* and *Buck's Range,* containing 225 acres, *to him
and his heirs* for ever. In case my son *John Elliott* should
die *without lawful issue,* my will is, that my dwelling plan-
tation shall descend to my son *Henry Elliott, provided he
gives up his right* to all my land in *Caroline* county, to be
equally divided between my daughters *Susanna, Rachel,
Mary, Elizabeth, Ruth* and *Rebecca;* and provided he does
not give up said land, my will is, that my home plantation
shall be equally divided betwixt my seven daughters afore-
said. In case my son *Henry Elliott* should die, failing of
issue lawfully begotten of his body, my will is, that my
daughters shall have my land in *Caroline* county." To
his daughters he bequeathed all his personal estate. *John*

A devise of land
charged with the
payment of a sum
of money in gross,
no matter how
small, gives the
devisee on his pay-
ing such sum, an
estate in fee.
A devise, on con-
dition that the de-
visee will convey
other lands which
he has any inter-
est in to third per-
sons, also gives to
the *devisee,* on his
making such con-
veyance, an estate
in fee in the land
devised.
There is no in-
stance in which
a devise, charged
with the payment
of a sum in gross,
has been held to
give the devisee
any other than an
estate in fee sim-
ple.

was his eldest, and *Henry* his youngest son, and his children mentioned in his will survived him; *John* entered upon the lands devised to him, and was lawfully and peaceably seized thereof, and died in 1795, intestate, and without issue, never having suffered any fine or common recovery, or executed any deed of bargain and sale, to bar any entail, or supposed entail, created by his father's will. *Henry*, upon the death of his father, entered upon the lands devised to him, and was lawfully and peaceably seized thereof. Upon the death of his brother *John*, he legally gave up all the lands, and all his right therein, pursuant to his father's will, in *Caroline* county, to his sisters, and took possession of the lands which were devised to his brother *John*, called *Matthew's Enlargement*, and described in his father's will as his dwelling and home plantation. *Henry* died in 1811, without issue, seized and possessed of said lands, having devised them by his will, dated the 16th of July 1813, to his sister *Ruth*, in tail; which said *Ruth* is one of the sisters mentioned in his father's will, and who has since intermarried with the defendant, and who, in virtue of the marriage, entered and is possessed of said lands. *Henry* never suffered any fine, or common recovery, or executed any deed of bargain and sale, to bar any entail, or supposed entail, created by his father's will. The lands devised to *John*, called *Matthew's Enlargement*, containing 155 acres, were worth $12 per acre, and those called *Grubby Neck Addition* and *Buck's Range*, containing 225 acres, $7 per acre, at the time of his death. *Sarah*, (one of the lessors of the plaintiff,) the wife of *Gibson*, (another of the lessors,) is a daughter of the testator. The other lessors are the sons and daughters of deceased daughters of the testator; and *Ruth*, the wife of the defendant, is also one of the testator's daughters. Other daughters of the testator died intestate, and without issue, before the action was brought. The county court gave judgment for the defendant, and the plaintiffs appealed to this court.

*Harrison* and *Tilghman*, for the appellant, cited *Doe d. Ellis vs. Ellis*, 9 *East*, 382. *Tenny vs. Agar*, 12 *East*, 253. If *Henry* did not take an estate *in tail*, he did not take a a fee. *Roe d. Peter vs. Daw*, 3 *Maule & Selw.* 518.

*Carmichael* and *Chambers*, for the appellee, relied on *Pow. on Dev.* 250, 251, 252, *Roe vs. Jeffery,* 7 *T. R.* 589. A devise is to be beneficial to the devisee. *Shep. Touch.* 296. *Hay vs. The Earl of Coventry,* 3 *T. R.* 83. *Roe vs. Daw,* 3 *Maule & Selw.* 518.

The opinion of the court was delivered by Johnson, J. After stating the case, he proceeded as follows: The les-sors of the plaintiff are a daughter and the representatives of other daughters of *John Elliott,* the first testator, who on the death of *Henry Elliott* without issue, claim an in-terest in the home plantation, or *Matthew's Enlargement,* on the ground that *Henry Elliott* had not such an interest therein as enabled him to devise it to his sister, the wife of the defendant. To support the pretensions of the lessors of the plaintiff, it is contended, that *Henry Elliott,* under his father's will, took only a life-estate in *Matthew's En-largement,* or an estate in fee tail. On the part of the ap-pellee it is contended, that he had an estate in fee, and that it passed by his will to the wife of the defendant. By the language of the will of the father, and according to the legal import given to the expressions used, both *John* and *Henry,* under the clauses by which the land is given to them, took estates in fee simple, clearly and technically expressed; and it seems equally clear by the limitations over, the estates given to each of them are reduced to estates tail—If *"John Elliott* should die without lawful issue, my will is that my dwelling plantation shall *descend* to my son *Henry Elliott"*—In case *"my son Henry Elliott* should die, failing of issue lawfully begotten, my will is that the land given to him shall be equally divided betwixt my seven daughters," are expressions too clear to admit of the least doubt, but that each of the sons took only estates tail in the land, in the first instance, devised to them. But the question, on which this clause depends, is, what estate had *Henry* in the land devised to *John,* on the facts as stated, at the time *Henry's* will was executed? In general, where land is given without mentioning what interest is to pass, the fee simple is designed; but according to the well established rules of law, when nothing is mentioned as to the extent of the interest, and there is nothing more in the will than the devise of the land, a life estate only will pass, the reversion in fee devolving on the heirs at law. In the will in question, on the death of *John,* without issue, *Henry*

June 1821.
Gibson, &c
vs
Horton

is to have the land; on the death of *Henry*, his sisters are to have that before given to him.   The extent of the interest given to either not being specified, *Henry* would only take a life estate in the home plantation, and they (the sisters,) only estates for lives, as tenants in common, in the land devised to him.   But the devise over to *Henry* depends on his giving up the land, before given to him, in value nearly equal to that of *John's,* supposing *Henry* to take an estate in fee therein.   He did give up the one, and took possession of the other.   Where land is given by will, without specifying the interest, charged with the payment of a sum of money in gross, no matter how small, the devisee, if he takes the land, must pay the sum; but his interest is by the charge enlarged to an estate in fee, which without such charge would have been but a life estate.   If being charged with the payment of a sum of money in gross, will convert a life estate to an estate in fee, surely charging the devisee, or making the devise to him depend on his conveying land belonging to himself to other persons, must have the same effect.   It was contended, that as *John* took but an estate tail, on his death *Henry* had no greater interest.   There is nothing in the will by which an estate tail can possibly be established in *Henry* to the land before given to his brother.   There are no words in the will, in the slightest degree, calculated to create such an estate.   If the clause making it necessary for him to convey his land to his sisters, can have any effect, it must enlarge the estate to a fee simple.   No instance, it is believed, exists, where an interest enlarged by a charge on land devised, has been restricted to an estate tail.   It has been urged that the conveyance of the lands by *Henry*, is not a charge on, but collateral to the devise.   The same might be said of the payment of a gross sum of money charged on the land; if the devisee refused to take the lands devised to him, he is not answerable for the money.   But *Henry* elected to take the land with the terms imposed—he has complied with those terms—his sisters obtained the full benefit of them; it would be great injustice to confine or limit his interest to a life estate in the land received in lieu of that conveyed; nor, according to the rules of law, can his interest be so restricted.   The judgment given by the county court is therefore affirmed.

JUDGMENT AFFIRMED.